UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

OLIVIA KEY,

        Plaintiff,

    v.

MATTHEW PALMER, et al.,

        Defendants.

No.  2:24-cv-01563 AC

ORDER

This case was filed on June 3, 2024, and is before the undersigned for all purposes pursuant to the consent of the parties.  ECF Nos. 1, 9.  On August 1, 2024, defendants moved to dismiss or for summary judgment.  ECF No. 8.  For the reasons set forth below, the motion is GRANTED insofar as it seeks dismissal, and this case is dismissed.

## I. Background

Plaintiff brought this action to compel the defendants to act on and adjudicate her husband's I-130 visa application.  ECF No. 1 at 2.  Foreign nationals may petition for immigrant visas based on a familial relationship with a U.S. citizen or Lawful Permanent Resident.  See 8 U.S.C. §§ 1151(b)(2)(A)(i), 1153(a)(1)-(4); 1201(a)(1)(A); 22 C.F.R. §§ 42.21, 42.42.  In accordance with the Immigration and Nationality Act (INA), consular officers have authority to issue immigrant visas.  8 U.S.C. § 1201; 22 C.F.R. § 42.71.  Before an officer can issue a visa, an applicant must make a proper application, 8 U.S.C. § 1201(a)(1), "in such form and manner"

1

prescribed by the regulations.  Id. at § 1202(a).  For family-based immigrant visas, a sponsoring U.S. citizen or legal permanent resident must file a "Petition for Alien Relative (Form I-130)" with the United States Citizenship and Immigration Services (USCIS).  8 U.S.C. § 1154.  If USCIS approves the I-130 form, it transfers the petition to the National Visa Center (NVC) for preprocessing if the noncitizen beneficiary of the visa petition is not located in the United States, and the beneficiary may submit a DS-260 Online Immigrant Visa and Alien Registration Application to begin the visa application process.  9 Foreign Affairs Manual (FAM) § 504.1-2(a)(1).

If the NVC determines an applicant is documentarily complete and a consular officer completes "necessary clearance procedures," the applicant is considered documentarily qualified "to apply formally for an immigrant visa[.]" 22 C.F.R. § 40.1(h).  The formal application involves "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on . . . Form DS-260[.]"  Id. § 40.1(l).  During the interview, an applicant may formally apply for an immigrant visa by swearing to or affirming the contents of the DS-260 and signing it before a consular officer.  22 C.F.R. § 42.67(a).  The INA provides "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b).  Once an application is properly completed and executed before a consular officer, the officer must either issue or refuse to issue a visa.  See 22 C.F.R. § 42.81(a).

Plaintiff filed a visa petition on behalf of her husband with USCIS in November of 2021.  ECF No. 1 at 2.  Plaintiff alleges that although USCIS approved the application, the visa remains pending.  Id.  Plaintiff alleges that in June 2023, her husband, Oskar Siwierski, was interviewed for the first time at the U.S. Embassy in the United Kingdom in connection with the case.  ECF No. 1 at 7.  During this interview, Siwierski was requested to submit his Polish Police Report, which was delivered to the U.S. Embassy in the United Kingdom on July 17, 2023.  Id.  After the interview, Siwierski learned that this case was placed in "administrative processing" pursuant to the Immigration and Nationality Act ("INA") § 221(g).  Id.

In September 2023, Siwierski was interviewed for the second time at the U.S. Embassy in the United Kingdom in connection with the visa application.  Id.  Following the interview, the

1   U.S. Embassy in the United Kingdom emailed Siwierski the DS-5535 form, which he submitted

2   back with the responses on the same day.  Id. at 8.  In November 2023, plaintiff requested

3   member of Congress Doug Lamalfa to inquire with the U.S. Embassy in the United Kingdom

4   about the status of her husband's visa application.  ECF No. 1 at 8.  The U.S Embassy in the

5   United Kingdom responded that the visa application was still undergoing administrative

6   processing, and that there is no timeline that can be given for completion of their review.  Id.

7   Doug Lamalfa asked plaintiff to contact him again if she did not receive any updates from the

8   Embassy after 120 days.  Id.  After 120 days, plaintiff contacted Doug Lamalfa and he inquired

9   with the U.S Embassy in the United Kingdom about the status of her husband's visa application

10  to which he received the same reply as before.  Id.

11         Plaintiff alleges that both she and her husband have faced emotional and financial

12  hardship due to the delay in processing the visa.  Id. at 1-5.  Plaintiff filed this suit on June 3,

13  2024, asserting causes of action under the Administrative Procedure Act, 5 U.S.C. § 706(1) for

14  unreasonable delay, The Mandamus Act, 28 U.S.C. § 1361 for unreasonable delay, and a

15  violation of her Due Process rights under the Fifth Amendment.  Id. at 9-12.  Defendants moved

16  for dismissal or summary judgment on August 1, 2024.  ECF No. 8.  Plaintiff opposed the

17  motion.  ECF No. 10.  Defendants submitted a reply.  ECF No. 11.  Defendants filed a notice of

18  supplemental authority on September 10, 2024.  Plaintiff responded on September 23, 2024.  ECF

19  No. 14.

20                              **II.  Analysis**

21         A.  Summary Judgment

22         Defendants assert they are entitled to summary judgment pursuant to Fed. R. Civ P. 56

23  because the doctrine of consular nonreviewability precludes judicial review of a U.S. consular

24  official's decision to refuse the visa application of a noncitizen.  ECF No. 8 at 8.  Under the

25  doctrine of consular non-reviewability, "ordinarily, a consular official's decision to deny a visa to

26  a foreigner is not subject to judicial review."  Khachatryan v. Blinken, 4 F.4th 841, 851 (9th Cir.

27  2021) (quoting Allen v. Milas, 896 F.3d 1094, 1104-05 (9th Cir. 2018)).  The application of the

28  doctrine of nonreviewability to visas that are placed in administrative processing pursuant to  INA

1 § 221(g) has been repeatedly considered and rejected by district courts in the Ninth Circuit; these

2 courts have determined that when a visa application is placed in administrative processing, rather

3 than straightforwardly denied, the plaintiff does not seek review of a final decision but rather

4 seeks the *issuance* of a final decision on a visa application, and the doctrine of nonreviewability

5 therefore does not apply.  See Ali v. Ordeman, 2024 U.S. Dist. LEXIS 90313, *8, 2024 WL

6 2274912 (E.D. Cal. May 17, 2024), Kiani v. Blinken, No. CV 23-5069-GW-JCX, 2024 U.S. Dist.

7 LEXIS 33887, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024); Gonzalez v. Baran, No. 2:21-

8 CV-05902-CAS-ASX, 2022 U.S. Dist. LEXIS 25493, 2022 WL 1843148, at *3 (C.D. Cal. Jan.

9 11, 2022) ('the 'administrative processing' designation [under § 221(g) is] insufficient to

10 constitute a refusal").  Neither the Supreme Court or Ninth Circuit has addressed the applicability

11 (or non-applicability) of the doctrine of consular nonreviewability to visa applications placed in

12 administrative processing.[1]

13       Under the circumstances present in this case, absent binding authority to the contrary, the

14 undersigned finds that the doctrine of consular nonreviewability does not bar plaintiff's claims.

15 See Abbassi v. Gaudiosi, 2024 U.S. Dist. LEXIS 82312, 2024 WL 1995246, at *4 (agreeing with

16 the "prevailing position among most other district courts" that the doctrine does not bar review of

17 a visa application in administrative processing); Iqbal v. Blinken, No. 2:23-CV-01299-KJM-CSK,

18 2024 WL 3904959, at *7, 2024 U.S. Dist. LEXIS 151121 (E.D. Cal. Aug. 22, 2024) ("[t]he court

19 joins with the courts that have found the refusal of a visa application for administrative processing

20 does not constitute a final decision); but see OC Modeling, LLC v. Michael Richard Pompeo, No.

21 2:20-cv-01687-PAMAA, 2020 U.S. Dist. LEXIS 188220, 2020 WL 7263278, at *3 (C.D. Cal.

22 Oct. 7, 2020) (finding the consular officer's refusal of a nonimmigrant visa application under INA

23 § 221(g) was a decision that precluded the court from acting under the doctrine of consular

24 nonreviewability).  To the extent defendants seek summary judgment, the motion is therefore

25 DENIED.

26

27 [1]  Defendants argue that the recent Supreme Court decision in Dep't of State v. Muñoz, 144 S. Ct.
1812, 1826 (2024) is controlling.  This case is inapplicable to this case with respect to the issue of
consular nonreviewability; Muñoz addressed a visa that was denied, not a visa held in
28 administrative processing pursuant to INA § 221(g).

1    B.  Legal Standards Governing Motions to Dismiss

2    "The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3    sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

4    1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5    sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901

6    F.2d 696, 699 (9th Cir. 1990). To survive dismissal for failure to state a claim, a complaint must

7    contain more than a "formulaic recitation of the elements of a cause of action;" it must contain

8    factual allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic

9    Corp. v. Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a

10   statement of facts that "merely creates a suspicion" that the pleader might have a legally

11   cognizable right of action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure

12   § 1216, pp. 235-35 (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter,

13   accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

14   U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when

15   the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

16   defendant is liable for the misconduct alleged." Id.

17   In reviewing a complaint under this standard, the court "must accept as true all of the

18   factual allegations contained in the complaint," construe those allegations in the light most

19   favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus,

20   551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

21   960 (9th Cir. 2010), cert. denied, 131 S. Ct. 3055 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

22   Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of

23   factual allegations, or allegations that contradict matters properly subject to judicial notice. See

24   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

25   Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

26   C.  Analysis: Administrative Procedures Act and Mandamus Act

27   Though the INA does not set a deadline for consular officers to review and adjudicate visa

28   applications, defendants have a duty to act within a "reasonable" time. See 5 U.S.C. § 555.

"[T]he APA and related case law provide 'law to apply' in determining whether defendants have failed to act within a reasonable time." <u>Khan v. Johnson</u>, 65 F. Supp. 3d 918, 926 (C.D. Cal. 2014). "[F]ederal courts routinely assess the 'reasonableness' of the pace of agency action under the APA." <u>Id.</u> (citation omitted). Under the APA, a reviewing court must "compel agency action ... unreasonably delayed[.]" 5 U.S.C. § 706(1). However, "[a] court can compel agency action under this section only if there is a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action." <u>Vietnam Veterans of Am. v. Cent. Intel. Agency</u>, 811 F.3d 1068, 1075 (9th Cir. 2016) (internal marks and citation omitted). "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'" <u>Id.</u> at 1075-76 (citation omitted).

The Mandamus Act "provides district courts with mandamus power 'to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.'" <u>Indep. Min. Co. v. Babbitt</u>, 105 F.3d 502, 507 (9th Cir. 1997) (quoting 28 U.S.C. § 1361). "Although the exact interplay between these two statutory schemes has not been thoroughly examined by the courts, the Supreme Court has construed a claim seeking mandamus under the [Mandamus Act] 'in essence,' as one for relief under § 706 of the APA." <u>Id.</u> (quoting <u>Japan Whaling Ass'n v. Am. Cetacean Society</u>, 478 U.S. 221, 230 n.4 (1986)). "Because the relief sought is essentially the same, in the form of mandamus," the court analyzes the sufficiency of the complaint under the APA. <u>Id.</u>

In determining whether an agency action was unreasonably delayed, courts consider the six "TRAC" factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

1   In re Nat. Res. Def. Council, Inc., 956 F.3d 1134, 1138-39 (9th Cir. 2020) (quoting Telecomms.

2   Research and Action Ctr. (TRAC) v. FCC, 750 F.2d 70, 79–80 (D.C. Cir. 1984).

3       Although not determinative, the first factor, "rule of reason," is the most important TRAC

4   factor and weighs most heavily.  In re A Cmty. Voice, 878 F.3d 779, 786 (9th Cir. 2017).  Courts

5   examine the length of delay and reason for the delay to determine "whether there is any rhyme or

6   reason for the Government's delay—in other words, whether the agency's response time . . . is

7   governed by an identifiable rationale."  Poursohi v. Blinken, No. 21-01960, 2021 U.S. Dist.

8   LEXIS 221350, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (internal marks and citation

9   omitted).  Where Congress has not supplied a period for agency action, courts look to caselaw to

10  determine whether the agency's action is unreasonably delayed.  See, e.g., Sarlak v. Pompeo, No.

11  CV 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally

12  supplied yardstick, courts typically turn to case law as a guide.").

13      Here, there were about 8 months between the last government action (when the consular

14  officer refused plaintiff's spouse's visa application with the administrative processing

15  designation) and the filing of the complaint on June 3, 2024.  ECF 1.  As of the date of this

16  decision, the delay stands at about one year.  "[I]n the immigration context, district courts have

17  generally found delays of less than four years are not unreasonable."  Lailaa Iqbal, 2024 U.S.

18  Dist. LEXIS 151121, *26-27 (collecting cases).  This delay in this case is relatively short in the

19  world of visa application processing delays, and cannot be considered unreasonable at this

20  juncture.  Ali, 2024 WL 2274912, at *6; Dastagir v. Blinken, 557 F. Supp. 3d 160, 162 (D.D.C.

21  2021) (delay of 29 months at the point of filing suit after being placed in "administrative

22  processing" following consular interview was not unreasonable).  This factor weighs strongly in

23  favor of dismissal.

24      "The second TRAC factor considers whether Congress has provided an indication of the

25  speed with which it expects an agency to act."  Jain v. Renaud, No. 21-cv-3115-VKD, 2021 WL

26  2458356, at *5 (N.D. Cal. June 16, 2021).  Here, there is no statutorily mandated timeline for the

27  Department to process plaintiff's spouse's visa case.  See Dastagir, 557 F. Supp. 3d at 166 (there

28  is "no statutory or regulatory timeframe" for processing immediate family immigrant visa

1   applications).  This factor weighs neutrally.

2           "The third and fifth factors overlap, requiring the court to consider whether human health

3   and welfare are at stake, and the nature and extent of the interests prejudiced by the delay."

4   Poursohi, 2021 WL 5331446, at *9.  Plaintiff argues that separation from her husband has had a

5   "negative impact" on "their finances, health, and welfare."  ECF No. 10 at 18-19.  The INA "was

6   intended to keep families together."  Solis-Espinoza v. Gonzales, 401 F.3d 1090, 1094 (9th Cir.

7   2005).  Although plaintiff's allegations of harm are conclusory, it is reasonable to infer that she

8   has suffered harm due to the prolonged separation from her husband.  These factors weigh in

9   plaintiff's favor, but not strongly so.

10          Under the fourth TRAC factor, the court considers the effect of expediting the

11  adjudication of the plaintiff's applications on other agency action of higher or competing priority.

12  Kapoor v. Blinken, No. 21-CV-01961-BLF, 2022 WL 181217, at *8 (N.D. Cal. Jan. 20, 2022).

13  This factor favors the defendants; plaintiff and her husband are not alone in their circumstances,

14  and ordering defendants to prioritize their application only further delays the resolution of other

15  applications.  Ali, 2024 WL 2274912, at *6,  Throw v. Mayorkas, No. 3:22-CV-05699-DGE,

16  2023 WL 2787222, at *5 (W.D. Wash. Apr. 5, 2023) (noting many families face delays and

17  ordering the State Department to schedule the beneficiary plaintiff's interview would not

18  ameliorate the situation); Jain v. Renaud, No. 21-CV-03115-VKD, 2021 WL 2458356, at *6

19  (N.D. Cal. June 16, 2021) ("Most courts have found that the fourth TRAC factor weighs heavily

20  in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply

21  move all others back one space and produce no net gain.").  The fourth TRAC factor weighs in

22  favor of the defendants.

23          Under the sixth and final TRAC factor, where a plaintiff has not made cognizable

24  allegations of impropriety, "courts in the Ninth Circuit have found this factor to either weigh in

25  the government's favor or to be neutral."  Poursohi, 2021 WL 5331446, at *11.  Plaintiff set forth

26  no such allegations, and the sixth TRAC factor weighs neutrally.

27          On balance, plaintiff's unreasonable delay claims fail under the TRAC factors.  Even

28  assuming that the allegations of the complaint are sufficient to satisfy factors three and five, the

1   alleged delay cannot as a matter of law be considered unreasonable at this time.  Plaintiff's

2   circumstances are unfortunately not uncommon, and district courts in the Ninth Circuit faced with

3   facts very similar to those in this case — visa delays measuring under two years while placed in

4   administrative processing — have consistently held that the lawsuits fail under the TRAC factors.

5   Ali, 2024 WL 2274912 at *7 (14-month delay), Morales v. Mayorkas, 23-cv-1758 BEN-MSB,

6   2024 WL 2884554, 2024 U.S. Dist. LEXIS 101959 (S.D. Cal. June 7, 2024) (17-month delay);

7   Abassi v. Gaudiosi, 1:23-cv-01573-CDB, 2024 WL 1995246, 2024 U.S. Dist. LEXIS 82312

8   (E.D. Cal. May 6, 2024) (12-month delay); Tenorio v. Bitter, No. 23-cv-1581-KK-SHKX, 2024

9   U.S. Dist. LEXIS 80689, 2024 WL 2873754 (C.D. Cal. May 1, 2024) (17-month delay); Andalib

10  v. United States, 23-cv-01110-FWS-KES, 2024 U.S. Dist. LEXIS 25434, 2024 WL 685945 (C.D.

11  Cal. Feb. 9, 2024) (7 - or 8-month delay); but see Lailaa Iqbal, 2024 U.S. Dist. LEXIS 151121 at

12  *35.[2]  While the undersigned empathizes with the pain and difficulty of plaintiff's circumstances,

13  the court must follow the weight of authority in its decision.  Under the circumstances present in

14  this case, dismissal is warranted.

15          D.  Analysis: Due Process Claim

16          Plaintiff's third cause of action alleging violation of her due process rights under the Fifth

17  Amendment to the U.S. Constitution is premised on the same conduct as her Mandamus and APA

18  claim.  On June 21, 2024, the Supreme Court held that a non-citizen spouse has no

19  constitutionally protected due process interest in the issuance of a visa because he or she is a

20  noncitizen abroad who has no right of entry into the U.S., and a U.S. citizen does not have a

21  fundamental liberty interest in his or her relative being admitted to the country.  Muñoz, 144 S.

22  Ct. 1812 at 1818.  Defendants argue, and the court agrees, that this recent decision forecloses

23

24  [2]  The court in Lailaa Iqbal denied defendant's motion for summary judgment under the TRAC
    factors, noting that the court was "concerned the 'administrative processing' designation is a
25  convenient bureaucratic label allowing defendants to place visa applicants … in limbo, where
    their visas are neither refused nor granted, but without any clear explanation as to when the
26  administrative processing or additional security screening will be completed."  This case is
    distinguishable because defendants are not seeking summary judgment on the TRAC factors; they
27  are moving to dismiss and have demonstrated that dismissal is appropriate under the present
    circumstances due to the recency of agency action in this case.  Dismissal will not preclude a
28  separate lawsuit if/when there is more substantial delay.

plaintiff's due process claim.  Plaintiff did not respond to this portion of defendants' motion to dismiss.  Because neither plaintiff nor her spouse has a fundamental right connected to plaintiff's husband's admission into the country, neither may state a due process claim associated with any delay in processing plaintiff's spouse's visa application.  The motion to dismiss will be granted.

### E.  No Leave to Amend

Although plaintiff does not request leave to amend in the event of dismissal, the Ninth Circuit has suggested that, in certain circumstances, "a district court should grant leave to amend even if no request to amend the pleading was made."  Ebner v. Fresh, Inc., 838 F.3d 958, 963 (9th Cir. 2016) (citation omitted).  The decision whether to grant leave to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'"  Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).  This is a liberal standard and leave to amend should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 951 (9th Cir. 2006).

Here, leave to amend would be futile at this time because the complaint is dismissed based on deficiencies that cannot be cured through the addition of new facts.  Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment . . . constitutes an exercise in futility.").  However, the dismissal is without prejudice, such that plaintiff may bring a future action if the delay unreasonably persists.

### III.  Conclusion

For the reasons set forth above, defendants' motion to dismiss (ECF No.  8) is GRANTED, and the complaint is dismissed without leave to amend, and without prejudice.  The clerk of court is directed to close this case.

DATED: September 24, 2024

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE